May it please the Court, I'd like to reserve five minutes for rebuttal, if I may. Yes, please. In this particular case, I'm troubled, and I hope that the Court's troubled, about the fact that a defense counsel would ever consider representing a client in a capital case, because this was a murder special circumstances, lying in wait, without ever talking to his client beforehand, knowing the full facts. He did talk to his client beforehand. Apparently, his client wouldn't talk to him. Well, over the telephone, hypotheticals, let's say never in person, in a comfortable manner, it seemed to me that the inference in the record is he never went down to the jail to talk to the client. To me, what I think is critical... The language I saw was under secure conditions. I wasn't sure what that meant, but I didn't see any implication that he didn't have face-to-face talks with his client. Can you point me to where in the record that's suggested? I can tell you what my interpretation is. I'm looking at the record. It sounded not so much secure condition that he could never talk... Mr. Hurd could never talk to his attorney without other inmates being around. To me, that meant by telephone, because in the attorney room in county jail, you can talk to somebody without other inmates around, either in a booth or whatever. The suggestion was that he was just... The word his lawyer used was paranoid. I don't know if that's accurate, but that he was unduly suspicious. So we really don't know what the circumstances were. I agree. What's important, forgetting what the circumstances are, what's important is trial counsel in the middle of trial. He did not feel he had enough information. Didn't he say he didn't... When he talked to the judge, didn't he say, I don't have enough information because my client won't give me straight answers. He's asking me to comment on hypothetical situations, that the client is not being forthcoming. And if it is your position that there was an explanation for that or that it required further elaboration, wasn't... I don't mean you personally, but wasn't it the burden of Mr. Hurd or his representatives to develop the facts in the state court and say, look, I received ineffective assistance of counsel. Typically, ineffective assistance of counsel cannot be inferred directly from the trial record. Therefore, we have to have some kind of evidentiary presentation. Wasn't that his burden? No question. And you're right. I come in the middle. Let me give you what I think my argument is because I think there's two places of ineffective assistance of counsel. There's trial and before trial. My feeling is my record is best established here before trial during plea bargaining. Okay? I'm not going to play. Before trial, I think you have a real problem because there's nothing in the record to substantiate the fact that there was an 11-year offer. Correct, except his declaration, but there is... What does his declaration say? Does he have a declaration that says that? Yes, there was an 11-year offer. I couldn't find one. It was in the writ. I don't know if I put it in the excerpt. I can quickly find it. But in the writ, he says 11-year offer. But let's stop at that moment, okay? Because it's only his declaration that he says 11-year, and I'm sure when the government comes on up, they're going to say, well, it's only his self-serving declaration. So let's move on. Clearly from the record, what we have is, in our excerpt, we show right before trial where the prosecutor states, Mr. Hurd has rejected an offer. And then we have it sentencing, the statement of his trial counsel, that the only thing offered was life. Let's start there, okay? We clearly have that. The 11-year... I need to know where in the record he says that there was an 11-year offer made. If I may do this, may I reserve that for rebuttal? Keep moving forward, and then at rebuttal I can... It could be there, but I couldn't find it. Okay. All right. I'll definitely be working on that during rebuttal. But let's talk about clearly an offer being made at least of life. This is life without parole he has been sentenced to. So life is something better. And what bothers me, and what I think should bother the court, is how can you advise a client to reject any offer if you don't know the full parameters what your defense is going to be? Because clearly in the in-camera hearing, trial counsel is saying, well, I only thought there was going to be this accomplice, that this was the only testimony that was going to be against him, and so I haven't fully developed to figure out what to do. My goodness, that was not the only evidence against Mr. Hurd. She might have been an accomplice or not, and I think the real problem was trial counsel was never expecting an immunity agreement. So he thought she was going to take the fifth and never testify, so he thought he was never going to have a trial. That's really what he is saying. The point is, how can he advise his client to accept or reject any offer if he doesn't know the case? But this is a very strange case because the record isn't all that well... Sorry. As you recognize. And the... But as I understand it, what the record is, is not that the lawyer failed to investigate, but the client failed to answer. I don't agree, okay? I don't agree. I say the lawyer failed to investigate by one, by making sure he could put his client in a comfortable place to tell him everything, and stop at the hypotheticals. I think the lawyer, and this is a tough thing to say because I'm not so sure everybody realized this unless you're a defense counsel, sometimes you go to your client last to get the information. You sometimes go to your client last to get the information. You don't go first. That's true, and that would be quite telling, except with regard to the precise information that we're talking about, which was his state of mind, right? Isn't that what we're talking about? We're absolutely talking about the state of mind, but the trial counsel goes into this case, I'm going to present a perfect self-defense. From the facts that I read, a perfect self-defense here is pretty hard. Imperfect self-defense is borderline. Maybe you're looking for second-degree murder here at best, but trial counsel is not even pursuing that to say to his client, all right, they're offering you life. Maybe they're offering 50 years to life, first-degree murder, let's strike this special circumstance, and the gun enhancement, and trial counsel is saying, oh, forget it. Don't worry about it. We got this perfect self-defense. You'll testify. We'll be fine. Well, we don't even know that he was saying that. And that's what I think we need an evidentiary hearing for, because what we do know, what we have in this record. Well, we know the defendant insisted on that. We don't know. The defendant? Okay. There's also a line in the ex parte hearing where trial counsel basically does state something, and I quickly read it, about the fact that he really didn't, something about the offers that he didn't advise or rejected, whatever, going to the point of the fact. I think the most important evidence that's here is Excerpt 7, the ex parte hearing. The next one would be the sentencing hearing where we have the rejection of life. But if there's any facts here, which I submit there are, it's the ex parte hearing between trial counsel and the court. And how is that prejudicial to Mr. Hurd? Sometimes the most important thing to advise a client is not to go to trial and accept the offer because you have problems. And so, if he had accepted an offer of life with the possibility for a... That's not the ex parte hearing issue, is it? That was the... No, but it's not, but the ex parte hearing gives the factual basis that the trial counsel never knew enough information prior to the date to properly advise his client to accept or reject an offer. Because... As I'm sitting here, I keep thinking, why is the record in the state and how does it interact with that? I gather, was there any attempt to make a record in the state court and could there have been? Well, that puts me in a very tough place. It's not the... How do I say? That could go to Infective Assistance of Appellate Counsel. I mean, put it another way. If we thought there were holes in the record here and we wanted to know more, could we legitimately, under AEDPA, order an evidentiary hearing or would we be faced with the fact that the standard under E2, which as I understand it is that there has to have been some barrier to begin with to developing the record before we can order one? I think you can order evidentiary hearing. I do think evidentiary hearings were requested in the state court. I think it should have been done. I think that is the best way. Really, what I'm hearing before this court is asking for an evidentiary hearing. I think that what needs to be done here is really determine was an offer made or not, did trial counsel have enough information, and what did he recommend his client do? Just to be clear, what is the record? There's the evidentiary hearing, there's the sentencing hearing. But there was no outside the appellate record development in the state court. And then there's this fairly lengthy declaration by your client, and that's it? Is that the record? That's the record. Except for trial transcripts, that's the record. Except for what? Trial transcripts. And trial transcripts. So there's one declaration. There was a second one which was not admitted, just to be plain about it. Is that right? There's the declaration that was attached to the petition, and that is in the record? Yes. I don't know about the second one. There was a second one. There was some reference to a second one attached to the Traverse, which the judge didn't admit. But I don't know why it was in it because I don't have it. I have not concentrated on the second one. I've only concentrated on the one that was attached that was admitted. Okay. All right. It's my position to be distinct that trial counsel reveals in the ex parte hearing in the middle of trial he did not have enough information then, so it's clear to see that any time prior to that he did not have enough, and he did not have enough to advise his client to accept or reject an offer. That clearly was given. We just don't know what the offer was and what the situation was, and I feel we didn't evidence your hearing on that. Unless there are any questions at this point, I'll reserve for rebuttal. Thank you. Good afternoon, Your Honors. May it please the Court, California Deputy Attorney General Corey Robbins for the respondent. Your Honors, with respect to four of the five ineffective assistance of counsel claims, those that turn on the existence of a viable voluntary manslaughter defense, I think with respect to those claims, there is no need for an evidentiary hearing, and this Court can certainly reject those claims based on the following point. The jury in this case had the opportunity to come back with second degree murder. It didn't. It came back with first degree murder and a lying in wait allegation, which under California law requires a finding equivalent to premeditation and deliberation. The California Court of Appeal in rejecting the voluntary manslaughter, the uncertified issue, the voluntary manslaughter instruction issue, found that even if that instruction should have been given, any error was harmless because the jury came back with a lying in wait allegation and first degree murder. The district court adopted that finding. That would apply, I submit, to the ineffective assistance of counsel claims. That can't possibly be right because the whole claim is that there would have been a different defense. Well, Your Honors, what we had was all of the evidence of premeditation, deliberation, and lying in wait. Against that, Petitioner's counsel did come up with a valid defense that was based on the evidence. He testified, Petitioner testified, not that he shot the victim in self-defense. He actually testified that the young lady involved shot him. That Petitioner was frightened, had obtained the gun, for some reason, went to the young lady's dorm room where Petitioner did not live, and then somehow the victim showed up. The prosecution, in contrast, presented all the evidence that Petitioner and his friend, accomplice David Lewis. Well, I agree with you that it's a very strange claim to say essentially I lied on the stand and if I had known better I would have said something else. But that's the claim.  If he had said something else, we don't know what the jury would have thought of it. So I just don't see how this is helpful. Well, I submit to the court without belaboring it any further that the court could make the same findings as the district court that they did with respect to the voluntary manslaughter instruction issue. You could transfer that same reasoning to the ineffective assistant. But you can't because in that instance you're keeping the trial transcript steady and you're just saying what would the jury have done with a different instruction. But if you have an IAC claim, the whole notion is that the trial transcript would have been different, not what it is now. So we don't know what would have happened. No, I do understand Your Honor's point. Nevertheless, what I would respond with is that the overwhelming strength of the prosecution's evidence in this case where the jury credited this plot, this premeditation and deliberation. Because they found the self-defense incredible. But whether they would have found a secondary manslaughter or a hate of passion defense incredible, we have no idea. Well, in light of the jury's finding that Appellant and his co-defendant did show up with a gun and lie in wait for the victim to come. Once the victim comes, maybe the voluntary manslaughter step. But what's the fifth one? The fifth one's the plea? The fifth one is the plea, Your Honor. Do you agree with me that there's nothing in the record about the 11-year or is there something in there about the 11 years? I could find nothing in the record about an 11-year. And my comments on the whole issue of the plea and whether an evidentiary hearing is warranted, I'll point out to the court, Appellant Petitioner was charged with capital murder. The death penalty committee decided not to seek the death penalty and to go for life without parole because of the lying in wait premeditation deliberation. That was the people's theory. At sentencing, it was noted, I believe by defense counsel, on the record, before Petitioner, before the trial judge, before the DA, that nothing less than a wife had ever been offered. No one controverted that statement. There is no ambiguity in the record anywhere. Well, I suppose there's an ambiguity about whether it was life with parole or life without possibility of parole. But maybe that doesn't matter because he's now claiming there was an 11-year. His only claim seems to be that there was an 11-year offer that was not taken. Right. Well, I think the comment at sentencing before Petitioner in front of the attorneys in the court would seem to belie that, but also reasonableness would belie that. Here you have a defendant charged with capital murder. They decided not to go for the death penalty, but still they're going after him with a lying in wait allegation for first-degree murder. Yes, but that's why you have pleas, and it's certainly possible that they would have pledged something less than they thought they were going to get in the trial. Second-degree murder, maybe, or first-degree murder with the possibility of parole, 25 to life. But certainly not an 11-year voluntary manslaughter. Well, there's no basis for that in the record. Correct. You know, I'd really like to respond to any questions the court might have on any of the issues. Well, I guess the question is this. There's certainly an awful lot we don't know about this case. Such as, you know, what were the circumstances of any interactions between the lawyer and the client earlier, and were they, in fact, all in places where it was not comfortable to have a conversation? And the part of the record I found most troublesome was where the lawyer said in the ex parte hearing, and then was lectured by the judge about the fact that he really didn't think there was anything to worry about in this case because of the incompetence issue. And then the judge lectured him. So my question is, how does AEDPA set up in terms of whether the petitioner has foregone the opportunity to further develop the record, or could there or should there be an evidentiary hearing at this point? Well, the petitioner did file various pleadings in state courts from the L.A. Superior Court on up, and he did seek an evidentiary hearing. But the Los Angeles County Superior Court rejected these ineffective assistance of counsel claims. And we would submit that those findings are entitled to deference under the AEDPA. They were rejected in a recent decision, and this is included in our excerpts, the supplemental excerpts. You know, and I can address each one. Is there any Supreme Court case that suggests that the state court's determination that the lawyers, I guess Mr. Hall's, efforts and communications were deficient? Is there any Supreme Court case that would suggest that? Not of which I'm aware, Your Honor. So when the state court determined that Hall's efforts and communications were not deficient, to your knowledge there's not a case that would say that was an objectively unreasonable application of Supreme Court precedent. That's correct, Your Honor. And under the AEDPA, applying deference to these opinions, petitioner would not be entitled to relief. And I would also note that one of the things that the Los Angeles County Superior Court found in its ruling was that any harm in trial counsel not speaking sooner with petitioner under whatever circumstances made petitioner feel more comfortable was cured by the fact that petitioner was able to speak with trial counsel in a secure environment. The trial court provided that. And I'd like to also point out that trial counsel was able to come up with a reasonable defense that he offered. And I'd like to just point to a couple pieces of evidence which really supported it. And before doing that, I'd like to briefly note what the district court found and what I believe was the Los Angeles County Superior Court in its recent decision found, which was that until the people had presented their case, their full case in chief, defense counsel did not fully know what he was up against. He had the discovery. He had whatever appellant petitioner was willing to give him. He had certainly interviewed Rachel Weavey. We know that much. There was nothing up until that point that would have foreclosed a second-degree murder, heat of passion kind of defense. That would have foreclosed it? Well, there was certainly nothing to support it in the people's case. But if he had wanted to get up on the stand and say what he's saying now, he would have done it. Oh, that's true. Your Honor's correct. Your Honor's correct. But they picked a different defense, and I'll tell you why. That was at least a reasonable tactical decision. They put on – well, the prosecutor put on a witness named Garcia, who heard Petitioner say through the wall she was the neighbor in the door room. She heard Petitioner say right after the killing, MAPA, referring to the young lady involved, why did you do this to me? Then Petitioner later testified that she was the one who shot him. They also, the defense, put on the testimony of Rachel Levy. And she testified, and Rachel Levy, in case the Court doesn't recall, was another young lady that Petitioner was said to have a relationship with, perhaps a child with. And Levy testified that MAPA was obsessed with Petitioner, that MAPA said if she couldn't have Petitioner, no other woman could, and MAPA said she would make sure of that. In addition, you had the evidence in the Peoples case of MAPA's cheating with Petitioner's friend, Thurman Brown, which might show a sense of vindictiveness on her part. And you also had the evidence of Petitioner's affairs with other women, having children with them, which could also demonstrate that he was not the one who was hung up on MAPA. It was the other way around. So they did present a reasonable tactical defense based on the evidence and based on what they were able to come up with. It just didn't work. I'd like to, if I may, make one final point. This is something that is not in the excerpts, but it is in the reporter's transcript, which I believe the Court does have access to. You know, we focused on comments the trial court has made to trial counsel at various points throughout the trial and assigned some level of significance. Well, with sentencing, the Court made the following comment. First, the Court said, and I'm paraphrasing now, in general, you never really know what the truth is. You have different witnesses, the jury renders a verdict, and I think he used the phrase God's truth is somewhere in the middle. You never know. But now I'm quoting. The trial court said, but in this instance, the jury's verdict, as I looked at the evidence, was not only supported by that evidence, but it's practically inescapable. I am unaware of any attorney that I have any knowledge about, either current or historical, who could have made the facts in this case appear any differently to the jury than they did in this trial. And that's in Volume 16 at 5146, 5147. So to the extent the trial court had any concerns about trial counsel, I think that statement at the end of trial would certainly address that. Thank you very much for your argument, Mr. Quahog. Thank you, Your Honors. I may respond briefly. Please. The declaration of Mr. Hurd is present, Excerpt 6, but I could not find any mention of the 11 years in there. Okay? So at this point, I can't find any factual assertion, and I apologize about that. But there is the assertion that a life plea offer was made. That's not your argument. That's not the argument that's been presented up until now. Yes, it is. It's a different argument. I'm sorry. No. The argument is that trial counsel was not fully informed of the facts at the time that an offer was made to properly advise his client. That's the argument. Okay? The 11 years or life is a factual situation. That's really not important. What's important is was an offer made before trial, and did the defendant have a trial counsel who was fully aware of the facts to advise him to accept or not? Is there anything in Mr. Hurd's declaration that if he had been offered life imprisonment, 25 years to life, he would have jumped at it? I could not find that. Okay? That's why it matters that his contention is 11 years because, you know, although one might be able to infer that he's saying that if he'd been offered 11 years, he would have taken it, there's no way to get an inference that if he was offered life, he would have taken it because he's not even saying he was offered life. Okay. I hate to do this. I came here from a closing argument on a jury trial. If there's any way I can indulge the court to look and see if there's anything that was presented in the lower federal court on a factual situation, if I could present a letter brief quickly and submit it to counsel. But I've looked. I don't think it's there. Okay. But I'm happy if you can find it. All right. Just very quickly to sum this up. I do think that the government has said it best, that there was overwhelming evidence, and that's the problem. A fully knowledgeable trial counsel would have known, Mr. Hurd, you better think about this offer. Let's give yourself a chance to get out of prison someday instead of rushing forward with this trial and not knowing what you're doing. But that's essentially what he said at the ex parte hearing. He said, now I'm finally getting some place with the client, but I want some private time with him. And the judge gave it to him. And the judge said, do you think that may mean that we won't have to have a trial? And he said, that may be. So essentially he was trying at that point to – because he thought now he was going to have the time, he was going to have a place, and he was going to get the story, and then he would be able to finally give some decent advice about whether to play or not. And that didn't happen, so we don't know why. But that – so why didn't that cure whatever the problem was? Two things. I don't remember if he said we're not going to have a trial, we'll have a plea. The court's got – I'm not disagreeing with you. Well, I remember because I've read it. It would be nice if you read it as well as I read it, really. I've read it three times. I mean, I didn't see that. I thought it was about testimony that he was talking about and not a plea. And I apologize because I've read it even when we're sitting here again. The court says – what I'm asking you, in effect, is are we talking about a situation where, depending on the outcome of the conversation, there is a potential for a disposition short of short of going to the jury, yes? Okay. We don't know if he then goes to the prosecution and the prosecution says it's too late. It's the middle of trial. Well, I mean, if we don't know, wasn't it incumbent upon Mr. Hurd or his representatives to say to the Superior Court, I want an evidentiary hearing and these are my reasons, these are my contentions? He asked for an evidentiary hearing. But he didn't put any of these contentions in. He did bring up the fact that counsel was ineffective at this time of the plea agreement. I'm governed by what I have here, and I understand the court's position. I think I've argued this as hard as I can, and you have the record. You need to look at the declaration. You need to look at the ex parte hearing. Clearly, I don't think Mr. Hall stood up to the standard. But to answer also the question, if there is a U.S. Supreme Court case on point, it is cited in the brief as 474 U.S. 52 Hill v. Lockhart. My memory serves me also that it's okay to make strategic decisions, but you have to investigate. And if you don't investigate, that's not a proper strategic decision. I believe that's a U.S. Supreme Court case like Williams v. Thompson. I couldn't – that's my memory. Sir, I can't cite that. There's plenty of cases. Okay, fine. Okay. And that's the point. And with that, I thank the Court's time. Thank you very much. Thank you, counsel. The case of Hurd v. Harris can be submitted. Okay. We're going to continue on. The next case is Gunn v. Reliant Standard, which has been submitted on the briefs. And the next case for argument is United States of America v. Juvenile Medicine.
judges: Berzon, Ikuta, Singleton